IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Debra E. Thomas, | ) | Civil Action No.  2:14-00383-RMG-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting | ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Debra E. Thomas, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 44 years old on her alleged disability onset date of August 31, 2010. (R. at 16, 26.) She alleged disability due to, *inter alia*, schizoaffective disorder, posttraumatic stress disorder, and personality disorder. (R. at 18.) Plaintiff has at least a high school education and past relevant work as a sales attendant and a veterinarian technician. (R. at 26.)

Plaintiff protectively filed an application for DIB and SSI on February 23, 2011. (R. at 16.) Her applications were denied initially and on reconsideration. (R. at 16.) After a hearing before an Administrative Law Judge (ALJ) on August 22, 2012, the ALJ issued a decision on September 18,

---

[1]  A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

2012, in which the ALJ found that Plaintiff was not disabled. (R. at 16-28.) The Appeals Council denied Plaintiff's request for review (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

> (2)    The claimant has not engaged in substantial gainful activity since August 31, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

> (3)    The claimant has the following severe impairments: schizoaffective disorder, posttraumatic stress disorder and personality disorder (20 CFR 404.1520(c) and 416.920(c)).

> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> (5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can perform only simple, routine and repetitive tasks. Additionally, she can only work in an environment that does not require production quotas or ongoing interaction with the public and requires only minimal decision-making.

> (6)    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

> (7)    The claimant was born on April 18, 1966 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

> (8)    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

> (9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"

whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that supplemental security income (SSI) disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. See 42 U.S.C. § 1381 et seq. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[2]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. See 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. See 20

---

[2]"[T]he definition of disability is the same under both DIB and SSI . . . ." Mason v. Colvin, Civ. A. No. 9:12-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (citing Emberlin v. Astrue, Civ. A. No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational.

4

Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The Plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, Plaintiff contends the ALJ made "improper credibility findings" and that the ALJ's rejection of the opinions of "the treating psychiatrist Dr. Bishop, the examining psychologist Dr. Teichner, and the treating mental health counselors was reached through misapplication of legal standards and was not supported by substantial evidence." (Dkt. No. 22 at 15, 31.) Plaintiff complains that the ALJ's rejection of these opinions constitutes reversible error for several reasons. (See Dkt. No. 22 at 17-31.)

Plaintiff first attacks the ALJ's rejection of the opinions on the grounds that they were "inconsistent with the underlying psychiatric treatment and counseling notes and were not based on 'significant objective abnormalities' or 'significant objective findings.'" (Id. at 17.) Plaintiff asserts the ALJ's rejection of these opinions because they "failed to cite 'any significant objective abnormalities'" is a "remarkable mischaracterization of the evidence in that it ignored considerable objective clinical evidence, including objective psychological testing, which showed severe limitations in mental functioning." (Id. at 18.) Plaintiff also asserts the ALJ "erroneously found" that Global Assessment of Functioning ("GAF") "scores of around 60 (defined as 'moderate') which were frequently assessed in the mental health center records, contradicted the opinions of Dr. Bishop, Dr. Teichner, and the mental health counselors about [Plaintiff's] work-related mental functioning." (Id. at 23.) Additionally, Plaintiff contends the ALJ's rejection of the opinions of Dr. Bishop, Dr. Teichner, and the mental health counselors as "inconsistent with [Plaintiff's] reported activities of daily living . . . was contrary to the Commissioner's regulations and policies concerning the evaluation of mental impairments and was not supported by substantial evidence." (Id. at 26.) Plaintiff asserts the ALJ's finding that Dr. Teichner's GAF score "may not be an entirely unbiased, impartial or accurate assessment of the [Plaintiff's] true level of functioning" is "clear legal error."

5

(Id. at 29-30.) Finally, Plaintiff contends that "[t]o the extent the ALJ relied upon the state agency psychological consultants to reject the opinions of Dr. Bishop and Dr. Teichner, the ALJ committed reversible error." (Id. at 30.) The undersigned addresses Plaintiff's arguments below.

## I.    Rejection of Dr. Bishop's Opinion

The undersigned agrees with Plaintiff that the ALJ's rejection of Dr. Bishop's opinion constitutes reversible error. Dr. Bishop, Plaintiff's treating psychiatrist, stated in a letter dated July 23, 2012:

> Ms. Thomas' diagnoses are Schizoaffective Disorder, Panic Disorder without Agoraphobia, Post Traumatic Stress Disorder and Personality Disorder. She is being treated on a regimen of psychotropic medication which includes anti-depressants, anti-anxiety medications and anti-psychotic medications. In the past there have been issues with compliance of taking medications consistently and keeping appointments, there are no current compliance issues. Her mental disorders are long-term and chronic and she needs psychiatric treatment.
>
> It is my opinion that Ms. Thomas is not able to sustain the mental demands of work at any level of skill or psychological stress in substantial competitive employment. She has had multiple jobs and has either quit due to stress or she was fired due to her poor performance which was greatly impacted by her symptoms related to her mental illness.

(R. at 460.) The ALJ noted Dr. Bishop's letter but gave it "little weight," stating,

> [I]n support of this opinion, Dr. Bishop did not cite any specific abnormalities or limitations, but only noted that the claimant's mental illnesses affect the claimant's insight and judgment and that she needs psychiatric treatment. (Exhibit B25F). Additionally, Dr. Bishop's own treatment notes do not support her opinion, as she assigned the claimant GAFs ranging from 59-61 in treatment notes dated from October 2011 through April 2012. These GAFs represent only moderate to mild symptomatology and are inconsistent with Dr. Bishop's opinion that the claimant cannot maintain gainful employment. Additionally, in her treatment notes, Dr. Bishop consistently documented that the claimant exhibited intact attention, concentration and memory, and in her most recent treatment notes, dated April 2012, Dr. Bishop noted the claimant's mental status examination was completely normal. (Exhibit B24F). Accordingly, because her opinion is inconsistent with her treatment notes and the other evidence of record, it has been given little weight.

(R. at 24-25.)

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians.

6

20 C.F.R. § 404.1545; 20 C.F.R. § 416.945; see also 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. 20 C.F.R. § 404.1527(c)(1)-(5); 20 C.F.R. § 416.927(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 1996 WL 374188, at *5; see also 20 CFR § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2).

In the instant case, Dr. Bishop saw Plaintiff multiple times, including in September of 2010, February of 2011, April of 2011, October of 2011, January of 2012, and April of 2012. (R. at 301-02, 306-07, 308-09, 444-45, 439-40, 434-35.) The ALJ gave "little weight" to Dr. Bishop's opinion because, inter alia, Dr. Bishop "did not cite any specific abnormalities or limitations," and Dr. Bishop's "own treatment notes do not support her opinion, as she assigned the claimant GAFs ranging from 59-61 in treatment notes dated from October 2011 through April 2012." (R. at 24-25.) However, Dr. Bishop's notes consistently indicate that Plaintiff's "target symptoms for treatment" are AV hallucinations, anxiety, delusions/paranoia, depression, irritability, mania/hypomania,

sleep/appetite disturbance. (R. at 301-02, 306-07, 308-09, 444-45, 439-40, 434-35.) Dr. Bishop's notes from September of 2010 indicate Plaintiff had good judgment but fair insight. (R. at 301.) Dr. Bishop also noted hallucinations and that Plaintiff hears "voices all the time," with "no difference made by any medication." (R. at 301-02.) Dr. Bishop's notes from February of 2011 indicate Plaintiff had impaired judgment and fair insight; her notes also indicate Plaintiff reported hearing a voice during her meeting with Dr. Bishop. (R. at 306-07.) Dr. Bishop's notes from April of 2011 indicate Plaintiff's focus was "ok" but her memory "is not good." (R. at 308.) Dr. Bishop listed Plaintiff's judgment and insight were both fair and indicated that Plaintiff had suicidal thoughts "about 3 weeks ago." (R. at 308.) According to Dr. Bishop's January of 2012 notes, Plaintiff again had fair insight and judgment, appeared disheveled, and heard occasional voices. (R. at 439.) Dr. Bishop's April 2012 notes indicate Plaintiff had fair judgment and insight and was still hearing voices. (R. at 434.)

Moreover, while the ALJ is correct that Dr. Bishop assigned GAF scores to the Plaintiff ranging from 59-61, the Social Security Administration has cautioned that the GAF, which "is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association," "does not have a direct correlation to the severity requirements in our mental disorders listing." "Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 Fed.Reg. 50746-01, 50764-765 (Aug. 21, 2000), available at 2000 WL 1173632. A plaintiff's GAF score is merely a "snapshot of functioning at any given moment." Powell v. Astrue, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013) (quotation marks and citation omitted). A GAF rating is "simply another observation which presumably is subsumed into the medical source's final assessment." Simpkins v. Astrue, No. 8:09-cv-855, 2010 WL 3257789, at *7 (D.S.C. May 13, 2010), adopted at 2010 WL 3257676 (D.S.C. Aug. 16, 2010).

In Parker v. Colvin, Civ. A. No. 0:13-cv-00153-DCN, 2014 WL 4793711 (D.S.C. Sept. 25, 2014), Judge Norton reversed the Commissioner's decision where the ALJ's "primary reason for discounting" a treating physician's opinion was "inconsistency with GAF scores." Parker, 2014 WL 4793711, at *3. Judge Norton's order provides, *inter alia*,

8

> The Commissioner, seemingly acknowledging that GAF scores alone are insufficient to discount a treating physician's opinion, argues that the ALJ "did not rely solely on inconsistent GAF scores," but also noted that Dr. Soto–Acosta's opinions were "unsupported by the doctor's own treatment note observations and inconsistent with additional evidence of record." Def.'s Objections 2. However, these additional reasons lack the specificity necessary to discount a treating physician's opinion. Indeed, the ALJ gives little insight into what specific evidence, beyond the inconsistent GAF scores, led him to discount the treating physician's opinions. Therefore, the court cannot adequately determine whether his decision to accord little weight to Dr. Acosta's opinions is supported by substantial evidence.

Id.

The case *sub judice* is not very different from <u>Parker</u>. While the ALJ in the instant case did not reject Dr. Bishop's opinion *solely* because of the GAF scores Dr. Bishop assigned, a fair reading of the ALJ's opinion indicates the GAF scores were a major factor in rejecting Dr. Bishop's opinion. As in <u>Parker</u>, the ALJ gives little insight into what specific evidence, beyond the inconsistent GAF scores, led him to discount Dr. Bishop's opinions. Although the ALJ also indicated that he gave Dr. Bishop's opinion little weight because she did not cite any specific abnormalities or limitations, Dr. Bishop's treatment notes *do* cite specific abnormalities, as detailed above. On this record, the undersigned simply cannot conclude the ALJ's rejection of Dr. Bishop's opinion was supported by substantial evidence. <u>See Parker</u>, 2014 WL 4793711, at *3; <u>see also Wall v. Colvin</u>, Civ. A. No. 8:12-3152-RMG, 2014 WL 517461, at *6 (D.S.C. Feb. 7, 2014) (the ALJ's "evaluation of the expert opinions . . . falls far short of the clearly established standards of the Treating Physician Rule" where, *inter alia*, "the opinions of Dr. Netherton, Plaintiff's long-serving treating-specialist physician, were largely dismissed without reference to the standards of the Treating Physician Rule," and "[n]o weight was noted to be given for Dr. Netherton's treating relationship or the fact that he is a pain specialist"); <u>Alexander v. Colvin</u>, Civ. A. No. 3:12-2631-RMG, 2014 WL 468973, at *5 (D.S.C. Feb. 4, 2014) (noting that the "glaring flaw" in the ALJ's rejection of the plaintiff's treating physician and examining physician "on the premise that the record lacks objective evidence of any spinal abnormalities" is that the "record does, in fact, document significant spinal abnormalities that support

the opinions" of the plaintiff's treating and examining physicians). On this record, the undersigned is unable to conclude the Commissioner's determination is supported by substantial evidence.

## II.    Remaining Claims of Error

Because the Court finds the ALJ's rejection of Dr. Bishop's opinion is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.   However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including, *inter alia*, Plaintiff's allegations that the ALJ made improper credibility findings and erred in evaluating the opinions of Dr. Teichner. (See generally Dkt. No. 22.)

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

April 9, 2015
Charleston, South Carolina